**STATE of Iowa, Appellee,**

v.

**Robert F. HUTCHISON, Appellant.**

**No. 68819.**

Supreme Court of Iowa.

Nov. 23, 1983.

Charles L. Harrington, Appellate Defender, and Raymond E. Rogers, Asst. Appellate Defender, Des Moines, for appellant.

Thomas J. Miller, Atty. Gen., Shirley Ann Steffe, Asst. Atty. Gen., and David E. Richter, County Atty., for appellee.

Considered by UHLENHOPP, P.J., and HARRIS, McCORMICK, LARSON, and SCHULTZ, JJ.

SCHULTZ, Justice.

Defendant, Robert F. Hutchison, appeals from his conviction for burglary in the second degree in violation of Iowa Code sections 713.1 and 713.3 (1981) and the determination under section 902.8 that he is an habitual offender. On appeal, he advances several arguments. Specifically, he asserts that (1) the trial court erred in admitting a pair of gloves into evidence because a proper chain of custody was lacking; (2) his motion for a directed verdict should have been sustained since the testimony of an accomplice was not adequately corroborated by independent evidence; and (3) in the facts of this case the "clear constitutional error" doctrine should be applied to excuse the failure of the defendant, acting pro se, to preserve error when his Fifth Amendment rights were violated. Defendant also claims he should be granted a new trial because he was denied effective assistance of counsel.

This case arises from a burglary and theft involving eight quarters of beef taken from a refrigerated semitrailer. At approximately midnight on March 12, 1982, an alert longtime resident of South Ninth Street in Council Bluffs was watching television when she heard her dog start barking. Curious about the disturbance, she looked out her window and saw a small U-Haul truck, without its headlights on, driving down the street in front of her house. She saw the vehicle stop and then begin to back across the curb and sidewalk onto the property across the street. Eventually, the truck stopped next to a side door of the house. Three men opened the truck, unloaded something, and then entered the darkened house. Because her suspicions were aroused, she called the police and reported the unusual activities. She then resumed her watch and finally observed the vehicle, occupied by three men, reenter the street and proceed about a block and a half before it was stopped by the police.

When the officers stopped the truck, they noticed the three occupants reeked of beef. The stolen meat subsequently was recovered from the basement of the house, observed and described by the alert citizen.

The defendant was arrested and charged, and a public defender was appointed to represent him. After his first trial ended in a mistrial, he was retried and convicted. This appeal arises from the second trial.

*I. Chain of custody.* At trial, an accomplice identified and claimed ownership of a pair of gloves received into evidence over the defendant's objection. In particular, he testified that he had loaned the gloves to the defendant on the night of the burglary. While he did not specifically describe any distinguishing characteristics of the gloves, he stated they were clean when he loaned them and now they were dirty and smelled like beef fat.

Although the defendant's objection to this evidence was not a model of clarity, we will assume he preserved error on his claim that large gaps existed in the chain of custody, making tampering or substitution reasonably probable. Essentially, defendant contends the admission of the gloves

was error since the State failed to establish a proper chain of custody.

 In *State v. Lamp*, 322 N.W.2d 48, 57 (Iowa 1982), we recently detailed the foundational requirements for establishing a proper chain of custody whenever physical objects are offered into evidence. Although we will not reiterate those principles here, we note that the sufficiency of the foundation depends on the susceptibility of the article to alteration or substitution. *Id.* Where exhibits consist of solid objects, not readily susceptible to undetected tampering, we ordinarily hold that a break in the chain of custody goes to the weight of the evidence rather than its admissibility. *State v. Limerick*, 169 N.W.2d 538, 541 (Iowa 1969). Admissibility is a matter committed to the sound discretion of the trial court, and reversal is warranted only when there has been a clear abuse. *See Lamp*, 322 N.W.2d at 59–60 (court did not abuse its discretion when it admitted clothes found near the scene of the homicide four days after the incident since it was proper to presume that a ranger, as an agent of the State, would not tamper with the clothes).

After the defendant and two other individuals were arrested in the early morning hours, the vehicle they occupied was seized by the police, impounded and searched. No gloves were found during this time. Later that morning, the owner picked up the van at the police impound lot. While cleaning the van, one of the owner's employees discovered the gloves lying on the floor and turned them over to the police. At trial he identified the gloves as the ones found in the van.

 The trial court did not abuse its discretion in admitting the gloves into evidence. We reach this conclusion for two reasons. First, the gloves were a solid object, and they were properly identified by both the owner-accomplice and the employee. Secondly, there was no material change or alteration in the condition of the gloves. The fact that the gloves were not discovered in the initial police search does not necessarily suggest substitution.

Questions concerning the characteristics or condition of the gloves and the time gap between the initial search of the vehicle and discovery of the gloves are matters that go to the weight of the evidence rather than its admissibility. The chain of custody evidence provided an adequate foundation for the admission of the gloves.

*II. Corroboration of accomplice's testimony.* The defendant contends the trial court should have granted his motion for a directed verdict because the State did not present sufficient evidence to corroborate the testimony of the accomplice. An inherent supposition in the defendant's claim is that without the accomplice's testimony, the remaining evidence is insufficient to generate a fact question on the defendant's participation in the crime. Without addressing this supposition, we turn to the issue of corroboration.

 In denying the motion, the trial court determined corroboration was provided by several items, including some of the clothing, the gloves and the defendant's physical presence in the van. Under Iowa Rule of Criminal Procedure 20(3), "[a] conviction cannot be had upon the testimony of an accomplice or solicited person unless corroborated by other evidence which shall tend to connect the defendant with the commission of the offense...." The existence of corroborative evidence is a question of law that must be determined by the court while the sufficiency of such evidence is normally a question of fact determined by the jury. *State v. Graham*, 291 N.W.2d 345, 350 (Iowa 1980). The corroboration of an accomplice's testimony need not be strong nor must it confirm every material fact testified to by an accomplice. *State v. Aldape*, 307 N.W.2d 32, 41 (Iowa 1981). All that is required is that the accomplice's testimony be supported in some material fact tending to connect the defendant with the offense. *Id.*

Here, the accomplice testified that the defendant was an active participant in the burglary, theft, and transportation and concealment of the beef. He stated that

each person handled the beef, wore gloves and got chunks of fat and grease on his clothing. After the meat was hidden, he indicated the defendant drove the van until it was stopped by the police.

■ Other evidence supported material elements of the accomplice's testimony and tended to connect the defendant with the crime. For instance, the citizen, who reported her suspicions to the police, testified about her observations concerning the unusual activity of the vehicle and its occupants. She described the truck's route to the house, its subsequent unloading and return to the street where it was eventually stopped by the police. She also described the movement of the three occupants until they were apprehended. The police testified that defendant was driving the truck and his clothing reeked of meat. This testimony clearly placed the defendant in company of the accomplice and in the vehicle used to transport the stolen meat. It also connected him with the quarters of beef later recovered from the basement of the neighboring house. In summary, substantial evidence corroborated the accomplice's testimony, and the trial court did not error in overruling defendant's motion for a directed verdict.

*III. Reference to defendant's election not to testify.* The defendant contends the prosecutor directly and indirectly commented on his election not to testify. Specifically, he claims these comments violated the self-incrimination clause of the Fifth Amendment as interpreted by the United States Supreme Court in *Griffin v. California*, 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965). Although no objections to the remarks or requests for a mistrial were made at the time, defendant urges us to adopt the "clear constitutional error" standard discussed in *State v. Johnson*, 272 N.W.2d 480, 484 (Iowa 1978). The State claims the prosecutor's statements were not impermissible references to defendant's silence and no extraordinary circumstances require us to abandon our normal preservation of error requirements.

In *Griffin*, the court held that prosecutorial comments concerning an accused's silence are constitutionally forbidden. We have adhered to this pronouncement and interpreted it to mean that the accused's silence may not be used directly or indirectly to aid the prosecution. *State v. Nelson*, 234 N.W.2d 368, 371 (Iowa 1975); *State v. Osborne*, 258 Iowa 390, 393, 139 N.W.2d 177, 179 (1965). We indicated in *Nelson* that preservation of error for objections to remarks of counsel are timely if urged at the close of argument or in a motion for mistrial made before submission to the jury. 234 N.W.2d at 371. We have not excepted constitutional issues from the requirement of timely preservation of error. *State v. Hamilton*, 309 N.W.2d 471, 476 (Iowa 1981).

In *Johnson*, we refused to adopt the "clear constitutional error" standard. There we stated "[i]f the improper reference is so inflammatory or prejudicial that the effectiveness of a limiting instruction would be subject to question, the defendant should move for a mistrial. Adequate remedies do exist at the trial court level and should be exercised at appropriate times." 272 N.W.2d at 484. *See also State v. Rinehart*, 283 N.W.2d 319, 324 (Iowa 1979), *cert. denied*, 444 U.S. 1088, 100 S.Ct. 1049, 62 L.Ed.2d 775 (1980) (where this court cited *Johnson* in again refusing to adopt the plain error rule). We do not now choose to abandon our preservation of error rules in favor of a discretionary plain error rule.

Nevertheless, defendant insists that we have recognized and should apply an exception to the preservation rule in cases, such as here, where counsel's comments are flagrantly improper and evidently prejudicial. We commented on this exception in *Pose v. Roosevelt Hotel Company*, 208 N.W.2d 19, 31 (Iowa 1973), citing *Shover v. Iowa Lutheran Hospital*, 252 Iowa 706, 717, 107 N.W.2d 85, 91 (1961). *See also State v. Phillips*, 226 N.W.2d 16, 19 (Iowa 1975); *Connelly v. Nolte*, 237 Iowa 114, 126, 21 N.W.2d 311, 317 (1946).

In the past, we have granted new trials despite insufficient objections when the prosecutor's misconduct was flagrant, intentional and inflammatory. *State v. McIntyre*, 203 Iowa 451, 456, 212 N.W. 757, 759 (1927) (prosecutor repeatedly and knowingly went outside the record in opening and closing argument to appeal to passion and prejudice of jury); *State v. Pierce*, 178 Iowa 417, 440–44, 159 N.W. 1050, 1059–61 (1916) (new trial granted despite lack of objection because of inflammatory remarks of prosecutor in enlarging on infamous crimes in community, claiming miscarriage of justice in another case, asserting defendant was guilty of thousands of crimes, accusing a witness of being a dope fiend without a record to justify it, and commenting otherwise outside the record concerning another criminal defendant).

Conversely, our more recent pronouncements, including the *Johnson* case relied on by defendant, clearly indicate that an accused cannot sit by and fail to avail himself of legal procedures (such as a motion for a mistrial) that would correct such errors and later raise these same errors as a ground for a new trial. 243 N.W.2d at 606. *See also State v. Delay*, 320 N.W.2d 831, 835 (Iowa 1982) (prosecutorial misconduct waived where defendant failed to move for a mistrial and banked on a favorable result); *Cf. State v. Gibb*, 303 N.W.2d 673, 678 (Iowa 1981) (generally a motion for mistrial must be made when grounds first become apparent); *State v. Phillips*, 226 N.W.2d 16, 19 (Iowa 1975) (not necessary to move for a mistrial to preserve error when defendant's objections were overruled by the court). Without deciding the validity of the claimed exception in view of our more recent cases, we agree with the State's contention that no extraordinary circumstances in this case prohibit the application of our preservation of error doctrine.

The first statement challenged by the defendant arose during his re-cross examination of a police officer. In answer to defendant's question, the officer testified about statements he had made to the defendant concerning his seized clothes, and the defendant, acting pro se, stated "no, you did not." The county attorney then responded, "object to that comment as being testimony as opposed to a question. If he wants to say that, he can say it later." No response was made by the defendant to either the form or content of the State's objection. Only now does the defendant raise the issue of improper comment on his election not to testify.

■ Initially, we determine this comment did not invade defendant's Fifth Amendment rights. "A statement is deemed to be an impermissible reference to defendant's silence if either (1) the prosecutor manifestly intended to refer to the defendant's silence, or (2) the jury would 'naturally and necessarily' interpret the statement to be a reference to the defendant's silence." *Catches v. United States*, 582 F.2d 453, 458 (8th Cir.1978). The prosecutor's objection and comment was in response to defendant's own improper outburst. It does not show a manifest intent to refer to defendant's silence. Nor was the comment the kind that would cause the jury, then or later, to improperly dwell on defendant's failure to testify. Finally and more directly to the point, this conduct was not flagrantly improper. It evinces no intentional, inexcusable or gross attempt by the prosecutor to improperly influence the jury. Any impropriety was minor and did not rise to the level of conduct required by the claimed exception.

■ The second comment, while not as innocuous, also does not constitute flagrant misconduct. It came as an outgrowth of defendant's closing argument. The following colloquy took place:

THE DEFENDANT: In fact when they stopped us, you know, they couldn't charge nobody with nothin really except for me. They stated to me that I was going to jail at that time.

MR. HRVOL: Your honor we're getting beyond the scope of the record again.

THE DEFENDANT: I withdraw it.

MR. HRVOL: If he wants to testify, I'll be happy to let him.

After this exchange the defendant continued his argument without objection. He now complains of Hrvol's last statement. An examination of defendant's argument and his questioning of witnesses reveals that defendant adroitly weaved his personal comments about the events into the record on numerous occasions without ever becoming a witness subject to cross-examination. While the prosecutor could have obtained the court's aid in striking such testimony and arguments, and did not always avail himself of this remedy, it bears some consideration in judging whether the prosecutor's comments were flagrant improprieties. Although we do not approve of this remark, under this record we do not find the conduct falls within the claimed exception.

■■■ The defendant also claims the prosecutor, in closing arguments, made an indirect reference to his failure to testify. We will not set out this argument. The remarks were directed at defendant's personal attack, during his closing argument, on the credibility of the accomplice. The prosecutor merely pointed out the stress of testifying in the adversary system. These comments are similar to an argument approved in *State v. Hollins*, 253 N.W.2d 597, 600 (Iowa 1977). We find no indirect comment on defendant's failure to testify.

■■■ In summary, we again refuse to adopt the "clear constitutional error" standard and further find none of these comments are so flagrantly improper and evidently prejudicial as to fall within the claimed exception. Accordingly, we need not apply the harmless error standard to the prosecutor's comments as recently mandated by the Supreme Court in *United States v. Hastings*, — U.S. —, 103 S.Ct. 1974, 1980, 76 L.Ed.2d 96, 106 (1983).

*IV. Claims concerning ineffective assistance of counsel.* Finally, defendant claims he was denied effective assistance of counsel during his second trial. He advances his claim by two different approaches. First, he levels complaints at the trial court for its failure to appoint substitute counsel or, alternatively, to hold a hearing when the defendant, acting pro se, expressed dissatisfaction with standby counsel. Second, he lodges specific complaints against standby counsel's performance.

A review of the record reveals abrupt shifts in the responsibility for defendant's legal defense. As an indigent, the defendant initially requested appointment of a particular private attorney. Instead, a public defender was appointed and served as defendant's counsel through the first trial and into the first day of his second trial. On that day, after a hearing, the court granted the defendant's request to proceed pro se with the public defender acting as standby counsel. Thereafter, defendant conducted his own defense with minimal help from the public defender.

*A. Court's failure to appoint other counsel.* Defendant claims the court's refusal to appoint different counsel violated his right to effective assistance of counsel. This claim arises out of his request for substitute counsel on the second day of trial.

The factual circumstances giving rise to this request commenced before the second trial and continued until the demand for substitute counsel was made. Approximately one week before the second trial, the trial court held a pretrial hearing with the defendant and public defender present. At that time, the public defender made a motion to withdraw as counsel because he felt a conflict was developing. The crux of this conflict was two-fold. First, the defendant wanted to call some witnesses that his counsel thought might be harmful to his defense. Additionally, the public defender had received a phone call from another attorney concerning some letters defendant had written threatening to sue the public defender. The trial court carefully questioned the defendant and specifically asked him if he was dissatisfied with his attorney. Defendant responded no but stated he wanted to be able to question some of the witnesses and also have final say over what witnesses would be called and what evidence would be entered into

the record. The trial court advised the defendant that he would be wise to defer to trial counsel's experience and skill and informed him that his right to participate in questioning certain witnesses would be decided by the judge who conducted the trial. After extensive advice and warnings from both the judge and public defender, all parties agreed the public defender would continue his representation with the defendant having ultimate say over trial tactics.

On the first day of trial prior to jury selection, the defendant informed the court that he wanted to act as his own lawyer with the public defender helping him with jury selection. Again a hearing was held. The court warned the defendant of the pitfalls of proceeding pro se, apprised him that the public defender would stand by in an advisory capacity, and attempted to dissuade defendant from representing himself. Defendant said he understood but persisted in defending himself. He also accepted the public defender as standby counsel but only when he specifically requested his help. The jury was selected and court adjourned until the next day.

When the trial resumed the next day, the defendant suddenly announced: "I wish to fire Mr. Heckerman (the public defender) at this time. I don't wish to further answer any court proceedings in this matter until such time as I get appropriate counsel."

The court then conducted a hearing out of the presence of the jury. During this in-chambers meeting, defendant stated that the public defender had disclosed information about his case. The judge did not delve further into this issue but instead informed the defendant that the trial was proceeding with or without him. He did give the defendant an opportunity to call another attorney, but apparently defendant was unable to reach him. The trial proceeded as scheduled, and the defendant represented himself.

 The law is well settled that a defendant not only has a constitutional right to counsel but also has a right to effective assistance of counsel. Similarly, a defendant can waive his right to counsel and defend himself as long as his waiver is knowing and intelligent. *Faretta v. California*, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975). Here, the defendant does not claim his waiver was ineffective. Rather, he claims that even though he elected to represent himself, the court should have responded to his eleventh-hour request for substitute counsel or at least held a hearing concerning his claim that the public defender disclosed information about his case. We cannot agree.

 While the court is required to hold a hearing when a defendant makes a substantial complaint about his counsel and further must appoint substitute counsel if the defendant demonstrates sufficient cause, *United States v. Young*, 482 F.2d 993, 995 (5th Cir.1973); *United States v. Morrissey*, 461 F.2d 666, 669–70 (2d Cir. 1972); *United States v. Hart*, 557 F.2d 162, 163 (8th Cir.), *cert. denied*, 434 U.S. 906, 98 S.Ct. 305, 54 L.Ed.2d 193 (1977), defendant's reliance on these cases is misplaced. In those cases, the defendant had not elected to represent himself but was still being represented by counsel against whom the complaints were leveled.

 Here, defendant was acting as his own counsel. The public defender whom he sought to fire was only standing by in a limited advisory capacity. Although advisory counsel is recommended when a defendant elects to proceed pro se, provision of standby counsel is not constitutionally required. *United States v. Spencer*, 439 F.2d 1047, 1051 (2d Cir.1971). Defendant does not have an absolute right to both self-representation and assistance of counsel. *United States v. Halbert*, 640 F.2d 1000, 1009 (9th Cir.1981). Additionally, defendant already had two full-blown hearings, one at the public defender's behest a week before trial and another at defendant's bidding on the first day of trial. Both of these hearings met the necessary constitutional requirements. At either of these hearings, defendant had an opportunity to fully express any dissatisfactions with the

public defender and request substitute counsel. We do not think trial court was required to disrupt the orderly process of trial at this late date and hold another full-blown hearing when the public defender had already been replaced as trial counsel so defendant could proceed pro se.

While we reach no conclusions about the purpose of defendant's actions on the second day of trial, we note the federal courts have been slow to find an abuse of discretion when the trial court denied an eleventh-hour request for substitute counsel. *United States v. Young*, 482 F.2d at 996 (5th Cir.1973); *United States v. Llanes*, 374 F.2d 712, 717 (2d Cir.), *cert. denied*, 388 U.S. 917, 87 S.Ct. 2132, 18 L.Ed.2d 1358 (1967); *United States v. Williams*, 594 F.2d 1258, 1260–61 (9th Cir. 1979). Defendant cannot proceed in a manner that will obstruct the trial and deprive the court of its inherent power to properly control and order the procedures. *State v. Taylor*, 211 N.W.2d 264, 267 (Iowa 1973). Moreover, trial courts are given considerable latitude and freedom of action to control and ensure orderly process at trial.

In sum, we think the trial court's actions afforded the defendant substantial protection. We find no abuse of discretion in the court's refusal to either hold a hearing or appoint substitute counsel on the second day of trial.

*B. Counsel's failure to request a trial transcript.* A request by an indigent for a transcript of a prior trial is normally proper, and the denial of such a request by the court could deprive the defendant of effective assistance of counsel. *See State v. Campbell*, 215 N.W.2d 227, 230 (Iowa 1974). Here, the court did not refuse the request because none had been made. Defendant was supposed to be represented at his second trial by the public defender who had conducted his defense in the first trial. Given his familiarity with the case, the public defender apparently felt a transcript was not necessary. We cannot charge him now with the knowledge that defendant would do an about face on the first day of trial and elect to represent

himself. Thus, we find, in the circumstances of this case, counsel's failure to obtain a transcript does not constitute ineffective assistance of counsel.

*C. Counsel's failure to request lesser-included offenses of trespass.* Defendant was charged with burglary in the second degree under Iowa Code sections 713.1 and 713.3 (1981). Accordingly, he insist that he was entitled to an instruction on the included offense of criminal trespass. Iowa Code § 716.7 (1981). Essentially, defendant claims standby counsel handled the exceptions to the jury instructions, and his failure to object to the instructions on this point deprived the defendant of effective assistance of counsel. The record shows the defendant handled his own objections to the instructions, and he affirmatively stated that he did not have any. The court then asked standby counsel if he had any objections, and he responded negatively. The defendant is not entitled to have it both ways. Stated otherwise, the defendant cannot knowingly and intelligently make an election to proceed pro se and then, having lost his trial on the merits, seek a reversal on appeal by claiming ineffective assistance of counsel.

Furthermore, even if the defendant had a right to rely on standby counsel to make the proper objection, he cannot claim he was prejudiced. During closing argument, defendant effectively removed the issue of criminal trespass by stating he was not disputing the fact that a burglary was committed but only that he participated in it. Since the defendant admitted the burglary and only denied his participation, this element was not in dispute. Therefore, it was not necessary to instruct on the lesser-included offense. *State v. Morgan*, 322 N.W.2d 68, 68–71 (Iowa 1982); *State v. Harlow*, 325 N.W.2d 90, 91 (Iowa 1982).

In conclusion, we find defendant's claims of ineffective assistance of counsel without merit. Having considered and rejected all

of defendant's arguments, we affirm his conviction.

AFFIRMED.